IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CARRIE THOMAS,                )
                              )
        Plaintiff,            )
                              )
v.                            )   Civil Action No. 3:20-CV-446-HEH
                              )
RAJAH WALTHALL, *et al.*,     )
                              )
        Defendants.           )

**MEMORANDUM OPINION**
**(Granting Defendants' Motions to Dismiss)**

This matter is before the Court on three Motions: Rajah Walthall's ("Walthall") Motion to Dismiss (ECF No. 24); the Piedmont Regional Jail Authority ("PRJA") and James H. Davis' ("Davis") Motion to Dismiss (ECF No. 28); Carrie Thomas' ("Plaintiff") Motion to Continue and Reset Deadlines (ECF No. 38).[1] In the Amended Complaint filed on July 27, 2020 (ECF No. 20), Plaintiff alleges that Davis, PRJA, Walthall, and four unknown officers ("John Does 1–4") violated her constitutional rights. The parties filed memoranda supporting their respective positions and the Motions are ripe for review. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument

---

[1] Plaintiff's counsel states that he is having difficulty contacting his client and Plaintiff is unable to be deposed in the near future; consequently, the case will not be on track with the current February trial date. As this Court will entirely dispose of the Amended Complaint, the Court will deny as moot the Motion to Continue and Reset Deadlines.

would not aid in the decisional process. *See* E.D. Va. Local Civ. R. 7(J). For the foregoing reasons, the Court will dismiss the Amended Complaint.

## I. BACKGROUND

Plaintiff was incarcerated at PRJA when, on June 3, 2017, Plaintiff was escorted from her cell by Walthall and John Does 1–4 for her medication distribution. (ECF No. 20 ¶¶ 5, 15.) While waiting for her medicine, Walthall and John Does 1–4 told Plaintiff to turn around and face the wall. (*Id.* ¶ 16.) Despite complying with their request, Plaintiff alleges that the correctional officers pulled on her arms, rupturing and breaking her right arm and elbow before handcuffing her. (*Id.* ¶¶ 17–20, 27.) While Plaintiff allegedly complained of pain during both the initial struggle and prior to receiving medical treatment, Plaintiff did not receive medical treatment as her arm swelled over the course of the following three days. (*Id.* ¶¶ 22, 29–30.) Plaintiff maintains that PRJA ignored her pleas for help. (*Id.* ¶ 31.)

Moreover, Plaintiff contends that PRJA knew or should have known that Walthall and John Does 1–4 had dangerous propensities based on prior unlawful conduct and excessive force. (*Id.* ¶ 28.) She further claims that Walthall and John Does 1–4 were unconcerned with the consequences of their actions. (*Id.* ¶¶ 25–26.) In addition, according to the Amended Complaint, because PRJA did not investigate the matter, Defendants purportedly "consider violat[ing] rights and inflicting violence upon a non-threatening inmate to be standard procedure" consistent with PRJA's custom, policy and practice. (*Id.* ¶ 26.)

Plaintiff brings five claims against Defendants. Pursuant to 42 U.S.C. § 1983

("§ 1983"), Plaintiff advances two counts of excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments against Walthall (Count I) and John Does 1–4 (Count II). Plaintiff claims a § 1983 *Monell* violation against PRJA and Davis (Count III) for promulgating a policy or custom that led to Plaintiff's injuries. Plaintiff brings a § 1983 claim against Davis in his capacity as a supervisor of the officers (Count IV). Finally, Plaintiff asserts a § 1983 claim against all Defendants for denial of medical care pursuant to the Eighth Amendment (Count V).

Walthall, PRJA, and Davis filed Motions to Dismiss Plaintiff's Amended Complaint as it pertains to them for failure to state a claim. In his Motion, Walthall asserts that Count I should be dismissed because placing a prisoner in handcuffs is not punishment and does not rise to the level of cruel and unusual punishment. (ECF No. 25.) Furthermore, Walthall states that Count V should be dismissed with respect to him because Plaintiff does not allege any specific wrongdoing on his part. (*Id.* at 12.) Davis and PRJA also challenge the sufficiency of Plaintiff's pleadings, contending Plaintiff neither has alleged a custom or policy nor sufficient facts to demonstrate supervisory liability. (ECF No. 29.)

## II. STANDARD OF REVIEW

"In reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A motion under Federal Rule of Civil Procedure 12(b)(6) "does not resolve contests surrounding

3

facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d at 226 (alteration in original) (quoting *Tobey,* 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

### III. DISCUSSION

To state a viable claim under § 1983, a plaintiff must allege that a person acting under the color of state law deprived him of either a constitutional right or a right conferred by a law of the United States. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred . . . . The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted). Plaintiff brings several claims stemming from two

4

constitutional injuries: first, that the officers utilized excessive force in detaining her and, second, that she was denied medical care.

### A. Excessive Force Claims

Plaintiff claims that the defendant officers utilized excessive force in violation of her constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. While each of these amendments protect a person's right to be free from excessive force, the Fourth, Eighth, and Fourteenth Amendments apply in different contexts. The Fourth Amendment is only applicable to "excessive force claim[s] aris[ing] in the context of an arrest or investigatory stop of a free citizen." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Fourteenth Amendment only permits pretrial detainees to allege excessive force claims pursuant to the Due Process Clause. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Convicted prisoners can bring excessive force claims only pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id.* In this case, Plaintiff was an inmate at PRJA at the time she was allegedly subjected to excessive force. (ECF No. 20 ¶ 5.) Accordingly, Plaintiff cannot bring claims pursuant to the Fourth and Fourteenth Amendments and the Court will dismiss all claims insofar as Plaintiff alleges a claim under the Fourth and Fourteenth Amendments. The Court's analysis of Plaintiff's excessive force claims is thus limited to the Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. VIII. In the prison context, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "An inmate's Eighth Amendment claim involves a subjective component

5

and an objective component." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). The analysis "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761. An injury is sufficiently serious if it rises above the level of *de minimus* harm. *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). However, the subjective component is a much more demanding standard. *Williams*, 77 F.3d at 761. The "state of mind required . . . is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. 312, 322 (1986)). Whether such wantonness can be established "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21 (internal quotation marks omitted).

Here, Plaintiff satisfies the objective component. Plaintiff alleges that Walthall broke her right arm and ruptured her right elbow, which is an injury that rises above *de minimus* harm. (ECF No. 20. ¶¶ 20–23.) However, Plaintiff's allegations do not satisfy the subjective component. Plaintiff maintains that the injury occurred as Walthall placed Plaintiff in handcuffs. (*Id.*) Plaintiff simply states that Walthall restrained her in handcuffs "with a devoid indifference to human welfare and conscious disregard for [Plaintiff]'s safety" and acted "intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose." (*Id.* ¶¶ 39, 41.) Placing a prisoner in handcuffs does not violate the clearly established rights of a prisoner. "[M]aintaining institutional security and preserving

6

internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights" of a convicted prisoner, requiring that courts defer to prisons to best determine how to preserve internal order. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979). As it stands, Plaintiff pled insufficient facts to show a "wantonness in the infliction of pain." *See Iko*, 535 F.3d at 239. The Amended Complaint is devoid of relevant facts to support her conclusion that Walthall acted with malice and did not have a legitimate penological purpose to restrain her. As such, the Court will dismiss Count I of Plaintiff's Amended Complaint without prejudice.

Next, Plaintiff contends that PRJA, through Davis as its chief policymaker and the officers' supervisor, should be held liable for the officers' alleged use of excessive force against her. (ECF No. 20 ¶¶ 58–69.) A public official is liable for the acts of his subordinates under § 1983 if the plaintiff demonstrates a supervisor's indifference or tacit authorization of a subordinate's misconduct. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). To establish supervisory liability, a plaintiff must show that (1) the supervisor knew that the subordinate acted in a way that "posed a pervasive and unreasonable risk of constitutional injury," (2) the supervisor's response was deliberately indifferent, and (3) the supervisor's inaction and the constitutional injury were causally connected. *Id.* The first element requires a plaintiff to show that "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* For a risk to be considered pervasive and unreasonable "requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the

7

subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* Under the second element, a "plaintiff assumes a heavy burden of proof in establishing deliberate indifference" and must establish that the supervisor failed to act in the face of known widespread abuses. *Id.* The third element requires that a plaintiff demonstrate an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff. *Id.*

Plaintiff fails to establish supervisor liability under § 1983. First, as previously noted, Plaintiff fails to allege a viable cause of action that the officers utilized excessive force to detain her and thus cannot show that Davis knew of any unconstitutional acts. Plaintiff alleges that Davis is liable as he "is responsible for the implementation and promulgation of official policies for PRJA" and that the officers were inadequately trained regarding handcuffing of non-threatening inmates. (ECF No 20 ¶¶ 60–63.) However, conspicuously absent from the Amended Complaint are other incidents of PRJA officers improperly handcuffing inmates due to inadequate training and that Davis was aware of such inadequacies. Plaintiff solely relies on her isolated experience to establish that the officers acted in a way that constituted a pervasive and unreasonable risk and that Davis was aware of such risk. Plaintiff's allegations do not satisfy any element of supervisory liability. *See Shaw*, 13 F.3d at 799. Therefore, the Court will dismiss Count IV of Plaintiff's Amended Complaint without prejudice.

Plaintiff also argues that PRJA and Davis are liable for Plaintiff's injuries under *Monell v. Department of Social Services*, 436 U.S. 658 (1986). Under *Monell*, a municipality may be liable for the acts of its employees "when execution of a

8

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Id.* at 694. An isolated incident is insufficient to establish a policy or custom. *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) ("[I]solated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or policy.") (internal citations and quotations omitted).

A municipality may also be liable for failing to train, supervise, or discipline its employees. *Connick v. Thomson*, 563 U.S. 51, 61 (2011) ("In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.") The failure to train must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). To present a viable failure to train claim, there ordinarily must be a pattern of constitutional violations to prove deliberate indifference. *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). *Canton* left "open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id.*

9

at 63; *Canton*, 489 U.S. at 390 n.10 (suggesting a city's decision to arm officers with firearms without training regarding the constitutional limitations on the use of deadly force could be characterized as deliberate indifference). "The vast majority of cases, however, do not involve issues as complex as the constraints on the use of lethal force, and rarely is the lack of training in an area so likely to result in a violation of a constitutional right." *Willis v. Blevins*, 966 F. Supp. 2d 646, 665 (2013).

Plaintiff here fails to present other similar incidents of misconduct at PRJA. Plaintiff relies on the isolated incident and the lack of disciplinary measures taken against the officers to infer that PRJA had a policy or custom of improperly training, supervising, and disciplining of the officers. Moreover, as stated above, the officers' actions as alleged were not improper. Therefore, the Court will dismiss Count III of Plaintiff's Amended Complaint without prejudice.

### B. Denial of Medical Care Claims

Plaintiff was allegedly subjected to cruel and unusual punishment in violation of the Eighth Amendment when she did not receive medical treatment for three days as her injured arm swelled. (ECF No. 20 ¶¶ 70–80.) A plaintiff must satisfy a two-part test to establish a viable claim of cruel and unusual punishment due to inadequate medical attention under the Eighth Amendment. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). The objective component is satisfied by a showing that a detainee had a serious medical need. *Id.* "[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241

10

(4th Cir. 2008) (internal quotations, citations, and alterations omitted).

The subjective component is established "by showing deliberate indifference by prison officials." *Johnson*, 145 F.3d at 167. "Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[A] prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *see Bridges v. Keller*, 519 F. App'x 786, 787 (4th Cir. 2013) ("[O]fficials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care.").

Plaintiff's contention that her injured arm progressively swelled satisfies the low threshold of the objective component because the injury could arguably be considered a serious medical need. Nevertheless, Plaintiff does not establish that the officers acted with deliberate indifference. Plaintiff makes no allegation that Walthall had any further interactions with her during the period she claims to have been denied medical care. Nor does she allege that her arm swelled immediately or in his presence. In fact, the Amended Complaint states that the swelling occurred gradually over the course of three

11

days. (ECF No. 20 ¶ 30.) Therefore, this Court finds that Plaintiff has not established that Walthall was aware of a potential a serious medical risk.[2]

Plaintiff also does not contend that Davis was personally involved in her initial denial or delay of medical care. As such, she cannot establish that Davis was deliberately different. Moreover, Davis cannot be liable as a supervisor for the officers' conduct as Plaintiff cannot prove the elements of supervisory liability. Plaintiff has not demonstrated plausible facts to show the officers were aware of a serious medical risk and thus fails to support her argument that Davis knew and failed to respond to any alleged constitutional injury the officers committed. *See Shaw*, 13 F.3d at 799. Furthermore, Plaintiff does not allege that the delay or denial of her medical care was part of a policy, custom, or practice of PRJA. Therefore, Plaintiff cannot bring a § 1983 action against PRJA for her initial delay or denial of medical care. *See Monell*, 436 U.S. at 694. Accordingly, the Court will dismiss Count V of Plaintiff's Amended Complaint as to Walthall, Davis, and PRJA without prejudice.

### C. Defendant John Does 1–4

In addition to the claims brought against Walthall, Davis, and PRJA, Plaintiff brings substantially similar claims against four unknown officers. Plaintiff alleges in Counts II and V that these officers used excessive force to detain her and denied her medical care, much like the other named Defendants.

---

[2] Walthall asserts the affirmative defense of qualified immunity. As the Court will dismiss the Amended Complaint for failing to state an Eight Amendment claim, the Court need not address whether Walthall is entitled to qualified immunity.

The United States Court of Appeals for the Fourth Circuit has noted that "[t]he designation of a John Doe defendant is generally not favored in the federal courts." *Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000). Moreover, "an action cannot be maintained solely against Doe defendants." *Banks v. City of Philadelphia*, 309 F.R.D. 287, 293 (E.D. Pa. 2015) (citing *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir.1998)). "[T]o allow for the claims against the unknown defendants to continue while the identified defendant has been dismissed is to ask individuals of whom we have no knowledge to defend a claim of which they have no knowledge . . . [and] would offend basic notions of due process." *Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 424 (E.D. Pa. 1998). Not only are actions against John Doe defendants not explicitly permitted by the Federal Rules of Civil Procedure, but these actions may lack Article III standing. *Price v. Marsh*, No. 2:12–cv–05442, 2013 WL 5409811, *3–4 (S.D. W. Va. Sept. 25, 2013) (noting that Rule 10 explicitly requires all parties to be named and served and, without naming the party, there may not be a case or controversy under Article III). Moreover, without a named party present, it is questionable whether a claim is sufficient to satisfy the plausibility standard. *Id.* at *5 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)).

In this case, Plaintiff has failed to state a claim as to any of the named Defendants as discussed above. Although Plaintiff does allege that John Does 1–4 handcuffed her using excessive force and denied her medical treatment for three days, Plaintiff does not present any factual allegations that are distinct from those alleged against the named Defendants. As discussed above, Plaintiff's Amended Complaint fails to present

13

plausible facts that rise to an Eighth Amendment constitutional violation. Thus, as the claims against John Does 1–4 are substantively the same as those previously analyzed, the Court will dismiss Count II and Count V as to John Does 1–4 without prejudice.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss will be granted. (ECF Nos. 24, 28.) Accordingly, the Court will dismiss Plaintiff's First Amended Complaint (ECF No. 20) without prejudice. The Motion to Continue and Reset Deadlines (ECF No. 38) will be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 2, 2020
Richmond, VA